**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | In Proceedings Under Chapter 7 |
| | : | |
| DONALD L. BASYE | : | CASE NO. 16-61628 |
| | : | |
| | : | ADV. NO. 16-06044 |
| Debtor | : | |
| | : | |
| BRIDGET BASYE | : | JUDGE RUSS KENDIG |
| | : | |
| Plaintiff | : | |
| | : | MOTION FOR SUMMARY |
| v. | : | JUDGMENT |
| | : | |
| DONALD L. BASYE | : | |
| | : | |
| Defendant | : | |

  Plaintiff, Bridget Basye, asks this court for summary judgment pursuant to Federal Rule of Bankruptcy Procedure 7056 and Fed. R. Civ. P. 56(a). This motion is premised upon the affidavit of Bridget Basye and all exhibits attached to the Bridget Basye complaint, discovery request, and affidavit. All of these exhibits are identified by her in her affidavit. A memorandum in support of this motion is set forth below.

Respectfully submitted,

Eric S. Miller, #0003166
Attorney for Plaintiff
13 Park Avenue West, Suite 608
Mansfield, Ohio 44902
(419) 522-6262
Email: ericmiller@neo.rr.com

## MEMORANDUM

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56 as adopted into bankruptcy practice by Federal Rule of Bankruptcy Procedure 7056. The court is required to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts are instructed to view the facts, and any reasonable inferences drawn from those facts, in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The movant "bears the initial responsibility of informing the … court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

11 USC 523(a)(5) and (15) concern the dischargeability of debts to spouses, former spouses and children of a debtor. On the whole, these types of debts have "traditionally been accorded favorable treatment in bankruptcy."

2

*Damschroeder v. Williams (In re Williams)*, 398 B.R. 494, 469 (Bank. N.D. Ohio 2008). As *Williams* notes, this favor includes priority treatment and nondischargeability. Id. Very broadly speaking, §523(a)(5) covers debts of support, alimony and maintenance while §523(a)(15) covers other domestic debts, including debts arising from divisions of property and the assumption of third-party debt.

Plaintiff, Bridget Basye has filed this action solely under §523(a)(15). §523(a)(5) does not apply because there was no award of alimony or child support payments in the Basye Divorce Decree.

§523(a)(15) provides:

> "that a discharge will not cover debts to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree, or other order of a court of record, or a determination made in accordance with State of territorial law by a government unit."

A tripartite test for §523(a)(15) was established in *Cheatham v. Cheatham (In re Cheatham)*, 2009 Bankr. LEXIS 3690, 2009 WL 2827951 (Bankr. N.D. Ohio 2009) (citing Williams, 398 B.R. 464, 468). To succeed on her dischargeability claim, Plaintiff must establish (1) the debt in question is to a spouse, former spouse, or child of the debtor; (2) the debt is not a support obligation of the type described in §523(a)(5); and (3) the obligation was incurred in a separation agreement, divorce decree, or other order of a court of record. Since *Cheatham* requires the bankruptcy court to determine the debt in question is not a support obligation of the type described in §523(a)(5),

3

Plaintiff asks the court to make that determination based solely upon the plain wording of the Divorce Decree.

An examination of the Plaintiff's affidavit and exhibits makes it clear that she is the Defendant's former spouse and that he agreed to pay their mortgage debt (defined as "The Marital Debt") and save her harmless. The Divorce Decree granted Defendant the home and the right to keep any equity he developed in the home. Defendant's obligation to pay The Marital Debt arose in the Divorce Decree. Defendant alleges he attempted to seek voluntary debt forgiveness from the creditor holding The Marital Debt. Defendant asserts that Plaintiff may not have supported his efforts as much as he would have liked, but the Divorce Decree does not require her to seek debt forgiveness from the creditor. It requires Defendant to pay the debt and save her harmless. There is no wording in the Divorce Decree that would support any of the affirmative defenses that Defendant Donald Basye raised in his answer to the complaint.

The United States Bankruptcy Court for the Northern District of Ohio, Eastern Division, has repeatedly upheld claims such as the Plaintiff's claim herein. Two decisions of this court that are on point are as follows: *In Re: Scott A. Kyer, Debtor. Carol Hamilton, Plaintiff v. Scott A. Kyer, Defendant.* Chapter 7, Case No. 12-62512, Adv. No. 12-6142, 2013 Bankr. LEXIS 3036 and *In Re: Rachel Dawn Fick, Debtor. Aaron W. Fick, Plaintiff, v. Rachel Dawn Fick, Defendant,* Chapter 7, Case No. 14-61560, Adv. No. 14-06051, 2015 Bankr. LEXIS 4037.

The Sixth District Bankruptcy Appellate Panel stated in *Gibson v Gibson*

4

*(In re Gibson),* 219 B.R. 195 (B.A.P. 6th 1998):

> "the judgment of an Ohio domestic relations court becomes the sole source of the parties' postdissolution rights and responsibilities with respect to their debts." Id. at 204.

The Divorce Decree ordered the Defendant to save Plaintiff harmless and Defendant cannot discharge this obligation simply by seeking voluntary debt forgiveness from the creditor. Defendant has totally failed to save Plaintiff harmless and under 11 U.S.C.§523(a)(15) he now owes her $54,000.00 plus interest at the rate of 5.625% from June 1, 2016.

Respectfully submitted,

_____
Eric S. Miller (#0003166)
Attorney for Plaintiff Bridget Basye

<strong>CERTIFICATE OF SERVICE</strong>

This is to certify that on _March 15_, 2017, a copy of Plaintiff's Motion for Summary Judgment was mailed to the following:

R. Joshua Brown, Esq.
32 Lutz Avenue
Lexington, OH 44904
Email: bk.joshbrown@gmail.com

_____
Eric S. Miller (#0003166)
Attorney for Plaintiff

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | : | In Proceedings Under Chapter 7 |
| | : | |
| DONALD L. BASYE | : | CASE NO. 16-61628 |
| | : | |
| | : | ADV. NO. 16-06044 |
| Debtor | : | |
| | : | |
| BRIDGET BASYE | : | JUDGE RUSS KENDIG |
| | : | |
| Plaintiff | : | |
| | : | AFFIDAVIT OF BRIDGET |
| v. | : | BASYE |
| | : | |
| DONALD L. BASYE | : | |
| | : | |
| Defendant | : | |

1. My name is Bridget Basye. I am the Plaintiff in this case.

2. I have read the complaint filed in this case. The allegations therein were true on the date the complaint was filed and they are still true today.

3. I have read this affidavit consisting of 8 pages and the statements set forth herein are true based upon my personal knowledge.

4. In addition to the facts stated in the complaint, I state the following. I will use the same definitions in my Affidavit that are in Defendant's answers to my discovery request that is attached to this affidavit.

a. The term "The Marital Debt" shall have the same definition as in the complaint.

b. The term "The Marital Abode" refers to the property located at 237 Markey Street, Bellville, OH.

c. The term "Short-Sale" refers to the sale of The Marital Abode as described in the documents attached as Exhibit C to the discovery answers.

5. Though our divorce decree required me to sign a Quit-Claim Deed in favor of my former husband, Donald Basye after he obtained my release from The Marital Debt, he never asked me to sign one. Instead, I was contacted by Donald's mother, Robin Walker, and told that they had arranged for him to sell The Marital Abode.

6. I did not ask any questions about Donald's sale of The Marital Abode. I knew it was his home. I just assumed he had paid The Marital Debt or would pay it from the sale proceeds.

7. Robin Walker, who is also a professional real estate sales person, sent a text to me on July 13, 2015 to inform me they had received an offer on The Marital Abode.

8. The communication can be verified by the text thread I still have on my phone. It said, "We got an offer on the house, we are hoping the bank will accept a short-sale. We need your signature on the documents. Matt (Donald's stepfather, Matt Walker was also a real estate salesman) will be sending them to you tonight.".

9. I responded via text saying, "I'll take a peek but I was advised by my lawyer that signatures would need to be done at the closing. So I'll just

2

forward them (the paperwork) to her, or I could give you her email and you could send them directly to her".

10. Robin Walker replied to me by text, "Call me.".

11. I texted Robin that I was currently in the middle of a work shift and could not make a phone call and would contact her later, to which she replied, "Your attorney doesn't know what she's talking about".

12. When I was able to contact Robin Walker via telephone, we had a very brief conversation. Her only explanation of a "short-sale" was to tell me that my signature on the awaiting paperwork would push the sale of the house through "quicker" if the bank approved the request.

13. From our brief discussion, I concluded that the word "short" in short-sale referred to a decreased amount of time for the sale of the house. I am quite certain she made no mention that I would owe a deficient amount on the mortgage. I admit I was naïve. I did not even know it was possible to sell a house without paying the mortgage in full so I did not think to ask if the debt would be paid in full.

14. The closing for the Short-Sale occurred on November 30, 2015 at Southern Title Company. I did not see Matt Walker or Robin Walker at the closing. No realtor was present for the closing because Donald refused to be in my presence. I was the only selling party at the time of my signing. Donald and his new wife, Veronica signed later.

15. I was shown the closing documents by a Southern Title employee and I simply signed where I was asked to sign. As I read the documents

3

at the closing, I did not notice any words indicating I would owe a deficiency.

16.     The Title Agent actually told me that I would need to claim the "profit" on the sale on my current year's taxes to avoid being audited by the IRS. When I said I was under the impression that there was no profit from the sale of the property, the Agent raised her hands and stated, "Well, I don't know anything about how things are being split, so just make sure you do your taxes right".

17.     Nothing was said to me at the closing and nothing was pointed out to me that would have alerted me to the meaning of the term "Short-Sale".

18.     If I had been skeptical and asked questions, I could have learned I was agreeing to continued liability on The Marital Debt but I was also told by the Southern Title Agent that she could not explain many of the details because she was not a realtor.

19.     About 2 months after the Short-Sale, I applied for a mortgage and my lender told me I had a defaulted mortgage loan on my record and therefore would not qualify for a home loan.

20.     I then immediately sent Matt Walker the email attached as Exhibit D to this affidavit.

21.     Robin Walker called me a few minutes later and told me that mortgage companies don't care what The Divorce Decree says. This was when I first learned that The Marital Debt was still my responsibility.

4

She told me that Donald would not be financing the deficiency and that he and I would have "to work together" to resolve the delinquency.

22.     5 months prior to this, Donald had changed his phone number and forbade all family members from sharing it with me. I had no means of direct contact with him for over 1 year, so I felt the suggestion of working together was not realistic.

23.     Robin Walker also told me that her son had not made payments for several months and The Marital Abode was about to go into a foreclosure at the time of the Short-Sale.

24.     That is the first I knew that there was a default in The Marital Debt and the first I knew that The Marital Abode was not sold for enough to pay The Marital Debt in full.

25.     As shown on Complaint Exhibit B, I have received notice from the lender or an assignee or an assigned collection agency for the lender that my new balance owing is $53,988.84. The interest rate on The Marital Debt was 5.625% as shown on the promissory note that is attached to this affidavit as Exhibit E. Page 3 of the Note states that any person who signs the Note is "fully and personally obligated to keep all of the promises in this Note, including the promise to pay the full amount owed". That is my signature on Page 3.

26.     Donald Basye never put any documents in front of me that would have released me from The Marital Debt. At one point, around January

22, 2016, I inquired of the USDA about whether it would release me from liability on The Marital Debt.

27. The USDA mailed a package to me that required extensive financial information. I received it about 2 months after the Short-Sale. I did not submit the package at that time. Instead, I brought a contempt action in the Domestic Relations Court.

28. A blank USDA form to apply for loan forgiveness is attached as Exhibit F and I fear disclosing the requested information just makes it easier for the lender to collect the unpaid Marital Debt balance from me.

29. I have read and attached as Exhibit G Donald's answers to my discovery request and I wish to dispute and clarify some of his answers:

A. I never refused to sign a quit-claim deed. The only deed anyone ever handed me for The Marital Abode was the deed I signed at the Short-Sale.

B. The only loan forgiveness packet I ever received was sent to me at my request, not Donald's, and I asked the USDA for it two months after the Short-Sale after I learned that I still owed The Marital Debt.

C. I hold two jobs and a creditor would make money by garnishing my wages. I have two children and I receive no child support. I have shared custody. I have misgivings about sending my financial information to the USDA because I might just trigger an aggressive collection action.

6

D. As a single mother with a family of three, I cannot afford to be garnished or to make payments on The Marital Debt, yet I do not want to file bankruptcy. This is one of the reasons why I did not apply to the USDA for debt forgiveness.

E. Another reason I did not apply for loan forgiveness last year is because I did not hear from Donald and did not know if he was applying for it or not. He never showed me his application. He never sent me anything to solicit my help in asking the USDA to forgive the debt.

F. The only action I know of that was taken by Donald to avoid paying The Marital Debt was when he filed for bankruptcy. I first learned of his bankruptcy when Donald's domestic court attorney asked for a stay of proceedings during our domestic contempt hearing in August of 2016 due to his filing bankruptcy. I am not tempted to file bankruptcy because The Marital Debt is the only obligation I cannot afford.

G. After his bankruptcy, I offered to settle this claim with Donald before I filed this case by having him make a partial payment on The Marital Debt, but he did not offer me one penny. He told me I could not win this case, so then I filed it.

H. In January of 2017, Donald told me he would pay $2,500.00 to the attorney of his choice in order to finance a Chapter 7 bankruptcy for me and to reimburse my attorney for costs and fees in filing this case.

That was Donald's one and only attempt to save me harmless on The Marital Debt.

Further Affiant Sayeth Naught.

_____
Bridget Easye

Sworn to before me and subscribed in my presence this _15_ day of March, 2017.

_____
Notary Public

ERIC S. MILLER
Attorney At Law
NOTARY PUBLIC, STATE OF OHIO
My Commission Has No Expiration
Section 147.03 O.R.C.

8

# MORTGAGE LOAN PAYOFF AGREEMENT

State of OH
County of Richland

Borrower / Seller (s): Donald L Basye and Bridget A Basye
Property Address Secured by Loan: 237 Markey St. Bellville, OH 44813
Loan Number: xxx5081

Definitions "You" and "your" refer to borrower(s) / seller (s) "we", "us", and "our" refer to Southern Title of Ohio Ltd.

You have entered into a loan transaction in which and existing loan secured by the above referenced property is being refinanced/paid in full. By signing below, you acknowledge that the payoff statement provided by the existing loan company contains the language "we reserve the right to revise this statement" regarding the existing loan balance with.

## Lender: USDA

If the actual payoff amount exceeds the payoff statement provided **YOU AGREE** to pay any additional amount necessary to satisfy the existing mortgage loan currently held against the property immediately, and to indemnify and hold harmless, Southern Title of Ohio Ltd.

I/we acknowledge receipt of the above disclosure and agree to the stated terms.

_____          _____
Donald L Basye                                         Bridget A Basye


Sworn to before me and subscribed in my presence this 30th day of November, 2015

                                        _____
                                        Notary Public



PLAINTIFF'S
EXHIBIT
C

OMB Approval No. 2502-0265

# A. Settlement Statement (HUD-1)

| B. Type of Loan | | | |
|---|---|---|---|
| 1.☐ FHA  2.☒ RHS  3.☐ Conv. Unins | 6. File Number: | 7. Loan Number: | 8. Mortgage Insurance Case Number: |
| 4.☐ VA  5.☐ Conv. Ins | 15-07-28A | 1153111146365 | |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. Name & Address of Borrower: | E. Name & Address of Seller: | F. Name & Address of Lender: |
|---|---|---|
| Ronald L Randolph III | Donald L Basye | The Park National Bank |
| 620 County Road 204 | Bridget A Basye | 21 S 1st St |
| Centerburg, OH 43011 | 237 Markey St | Newark, OH 43055 |
| | Bellville, OH 44813 | |

| G. Property Location: | H. Settlement Agent: | TIN: |
|---|---|---|
| 237 Markey St | Southern Title of Ohio, Ltd. | |
| Bellville, OH 44813 | 58 W Third St | Phone: (419) 525-4600 |
| | Mansfield, OH 44902 | |
| County: Richland | Place of Settlement: | I. Settlement Date: 11/30/2015 |
| | 58 W Third St | |
| : | Mansfield, OH 44902 | Funding Date:  11/30/2015 |

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100. Gross Amount Due From Borrower** | | **400. Gross Amount Due To Seller** | |
| 101. Contract sales price | 86,500.00 | 401. Contract sales price | 86,500.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (line 1400) | 5,555.66 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes: | | 406. City/town taxes: | |
| to | | to | |
| 107. County taxes: | | 407. County taxes: | |
| to | | to | |
| 108. Assessments: | | 408. Assessments: | |
| to | | to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. Gross Amount Due From Borrower** | 92,055.66 | **420. Gross Amount Due To Seller** | 86,500.00 |
| **200. Amounts Paid By Or In Behalf Of Borrower** | | **500. Reductions In Amount Due To Seller** | |
| 201. Deposit or earnest money | 500.00 | 501. Excess deposit (see instructions) | |
| 202. Principal amount of new loan(s) | 86,734.00 | 502. Settlement charges to seller (line 1400) | 14,613.25 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first mortgage loan | 67,107.01 |
| | | to USDA | |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. Seller paying closing costs | 3,500.00 | 507. Seller paying closing costs | 3,500.00 |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes: | | 510. City/town taxes: | |
| to | | to | |
| 211. County taxes: 1/1/2015-11/30/2015 | 1,307.14 | 511. County taxes: 1/1/2015-11/30/2015 | 1,307.14 |
| to | | to | |
| 212. Assessments: | | 512. Assessments: | |
| to | | to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. Total Paid By/For Borrower** | 92,041.14 | **520. Total Reduction Amount Due Seller** | 86,527.40 |
| **300. Cash At Settlement From/To Borrower** | | **600. Cash At Settlement To/From Seller** | |
| 301. Gross amount due from borrower (line 120) | 92,055.66 | 601. Gross amount due to seller (line 420) | 86,500.00 |
| 302. Less amounts paid by/for borrower (line 220) | 92,041.14 | 602. Less reductions in amount due seller (line 520) | 86,527.40 |
| **303. Cash ☒ From ☐ To Borrower** | 14.52 | **603. Cash ☐ To ☒ From Seller** | 27.40 |

The Public Reporting Burden for this collection of information is estimated at 35 minutes per response for collecting, reviewing, and reporting the data. This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number. No confidentiality is assured; this disclosure is mandatory. This is designed to provide the parties to a RESPA covered transaction with information during the settlement process.

© 2009-2012 Easy Soft. Previous editions are obsolete.          Page 1 of 3          HUD-1





16-06044-rk   Doc 11   FILED 03/15/17   ENTERED 03/15/17 16:49:57   Page 15 of 35

| L. Settlement Charges      File Number: 15-07-28A    Loan Number: 1153111146365 | | Paid From Borrower's Funds at Settlement | Paid From Seller's Funds at Settlement |
|---|---|---|---|
| **700. Total Real Estate Broker Fees** | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. $2,595.00              to Haring Realty | | | |
| 702. $2,595.00              to Vail Realtors | | | |
| 703. Commission paid at settlement | | | 5,190.00 |
| 704. | | | |
| **800. Items Payable In Connection With Loan** | | | |
| 801. Our origination charge | $1,150.00 | (from GFE #1) | |
| 802. Your credit or charge (points) for the specific interest rate chosen   $ | | (from GFE #2) | |
| 803. Your adjusted origination charges The Park National Bank | | (from GFE A) | 1,150.00 | |
| 804. Appraisal fee to Kirk Appraisal Services | | (from GFE #3) | 350.00 | |
| 805. Credit report to CBC Innovis | | (from GFE #3) | 10.50 | |
| 806. Tax service to | | (from GFE #3) | |
| 807. Flood certification to ServiceLink | | (from GFE #3) | 6.00 | |
| 808. | | | |
| 809. Completion Cert to Kirk Appraisal Services | | (from GFE #3) | 100.00 | |
| 810. | | | |
| 811. | | | |
| **900. Items Required By Lender To Be Paid in Advance** | | | |
| 901. Daily interest charges from 11/30/2015 to 12/1/2015 @ $9.2081/day | | (from GFE #10) | 9.21 | |
| 902. Mortgage insurance premium for 0 months to | | (from GFE #3) | |
| 903. Homeowner's insurance for 1 years to State Farm | | (from GFE #11) | 717.00 | |
| 904. Guarantee Fee to Rural Development | | (from GFE #3) | 1,734.69 | |
| 905. | | | |
| **1000. Reserves Deposited With Lender** | | | |
| 1001. Initial deposit for your escrow account | | (from GFE #9) | 463.76 | |
| 1002. Homeowner's insurance | 2   months @ 59.75 per mo | $119.50 | |
| 1003. Mortgage insurance | 1   months @ 35.84 per mo | $35.84 | |
| 1004. Property taxes | 6   months @ 119.04 per mo | $714.24 | |
| 1005. | months @    per mo | $ | |
| 1006. | months @    per mo | $ | |
| 1007. Aggregate Adjustment | | $-405.82 | |
| **1100. Title Charges** | | | |
| 1101. Title services and lender's title insurance Southern Title | | (from GFE #4) | 660.00 | |
| 1102. Settlement or closing fee Southern Title | $150.00 | (from GFE #5) | | 100.00 |
| 1103. Owner's title insurance Southern Title | | | | 500.25 |
| 1104. Lender's title insurance Southern Title | $225.00 | | |
| 1105. Lender's title policy limit | $86,734.00 | | |
| 1106. Owner's title policy limit | $86,500.00 | | |
| 1107. Agent's portion of the total insurance premium | $616.46 to Southern Title | | |
| 1108. Underwriter's portion of the total insurance premium | $108.79 to Old Republic | | | 75.00 |
| 1109. Deed Preparation Fee to Renwick Welsh & Burton | | | | 20.00 |
| 1110. Overnight Fees to Southern Title | | | |
| 1111. | | | |
| **1200. Government Recording and Transfer Charges** | | | |
| 1201. Government recording charges Richland County Recorder | | (from GFE #7) | 184.50 | |
| 1202. Deed $36.50              Mortgage $148.00              Release $32.00 | | (from GFE #8) | | 32.00 |
| 1203. Transfer taxes Richland County Auditor | | | | 346.00 |
| 1204. City/County tax/stamps: Deed $              Mortgage $ | | | |
| 1205. State tax/stamps: Deed $              Mortgage $ | | | |
| 1206. | | $ | |
| 1207. | | $ | |
| **1300. Additional Settlement Charges** | | | |
| 1301. Required services that you can shop for | | (from GFE #6) | 170.00 | |
| 1302. | | | |
| 1303. Location Survey to Seiler and Craig | $170.00 | | | 350.00 |
| 1304. Pin Survey to Roger Stevens | | | | 8,000.00 |
| 1305. Roof repairs to Worker Bee Construction, LLC | | | |
| 1306. | | | |
| 1307. | | | |
| 1308. **Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | | 5,555.66 | 14,613.25 |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_Ronald L. Randolph_ (signature)                                        Buyer/Borrower

Ronald L Randolph III

_Donald Busye_ (signature)                                                  Seller

Donald L Basye

_Bridget Basye_ (signature)                                                  Seller

Bridget A Basye

_____              Buyer/Borrower

This HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction. I've caused or will cause the funds to be disbursed in accordance with this statement.

_Southern Title_ (signature)

Southern Title of Ohio, Ltd.          Settlement Agent          Date
                                                                11/30/2015

WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine or imprisonment.

© 2009-2012 Easy Soft. Previous editions are obsolete.          Page 2 of 3          HUD-1



# United States Department of Agriculture
## Rural Development
### Columbus, Ohio
200 North High Street – Room 507, Columbus, OH 43215-2418
Phone: 614-255-2411   FAX: 614-255-2563
World Wide Web: http://www.rurdev.usda.gov/

August 24, 2015

HARING REALTY, INC
MATT WALKER
VIA E-MAIL

The following represents the net recovery (SHORT SALE) on the above subject:

| | |
|---|---|
| BORROWER'S NAME: | DONALD & BRIDGET BAYSE |
| CASE NUMBER: | *******5081 |
| SALES CONTRACT: | $86,500.00 |
| CLOSING COST: | $10,754.59 * |
| BALANCED MADE PAYABLE TO | |
| USDA-RURAL DEVELOPMENT: | $75,745.41 |

\* SELLERS CLOSING COSTS, MORTGAGE RELEASE FILING FEE OF $32.00, AND PRIOR LIENS PAYMENTS, IF ANY, OF UP TO $10,754.59 ARE APPROVED.  THIS OFFICE, PRIOR TO CLOSING MUST APPROVE ANY ADDITIONAL COST.  IF THE SELLERS CLOSING COSTS ARE LESS, THE BALANCE IS TO BE ADDED TO RURAL DEVELOPMENT'S PROCEEDS.  ANY REFUNDS OF ESCROWED FUNDS ARE TO BE APPLIED TO THE RURAL DEVELOPMENT DEBT.

**THIS APPROVAL IS GOOD UNTIL 09/30/15.**

Please make the check payable to USDA-RURAL DEVELOPMENT.  Please mail the payment to the Columbus, Ohio address listed at the top of this page.

We will prepare the release of mortgage and forward to the closing agent for recording, once the sale proceeds are posted to the account.  The closing agent should withhold the release fee as a closing cost to the seller. *The seller is cautioned; this may not pay their Rural Development debt in full.  The seller may wish to consult with a tax and or a legal advisor on possible income tax or remaining loan liabilities.  Our Agency will contact the seller, concerning the settlement of any remaining debt.*

If you have any questions, please contact this office.

Sincerely,

JOHN W. RUNYAN
Rural Development Specialist

CC:    DONALD & BRIDGET BAYSE
       237 MARKEY STREET,
       BELLEVILLE, OHIO 44813

*Committed to the future of rural communities*

"USDA is an Equal Opportunity Provider, Employer and Lender."  To file a complaints of discrimination write:
USDA, Director, Office of Civil Rights, 1400 Independence Avenue, S.W., Washington, DC 20250-9410 or call
(800) 795-3272 (voice) or (202) 720-6382 (TDD)

dotloop signature verification: www.dotloop.com/my/verification/DL-112442186-3-2839

# Authorization to Release/Negotiate with Lender

I/We **Donald Basye** hereby grant to

**Matt Walker, Robin Walker** (REALTOR) permission and consent to negotiate with our

Lender/Mortgage Holder, **USDA** ;

regarding account # **33105081** . I/We further authorize

the above lender to release any information to my REALTOR that they may request regarding

our loan and the status thereof.

Borrower/'s Name/'s **Donald Basye** .

Address of Property **237 Markey St., Bellville, OH. 44813** .

Borrower/'s Date of Birth **6/20/1983** .

Borrower/'s S.S.N. **4480** .

| Donald L Basye | dotloop verified 07/15/15 7:11PM EDT DHFM-2UIT-5ZEE-FR45 | Donald L Basye | dotloop verified 07/15/15 7:11PM EDT BQYX-VAPS-GEEK-MARK |
|---|---|---|---|
| Borrower Signature | Date | Borrower Signature | Date |

| | |
|---|---|
| **From:** | Bridget Basye <abdbasye@gmail.com> |
| **Sent:** | Tuesday, February 28, 2017 3:30 PM |
| **To:** | Eric Miller |
| **Subject:** | Fwd: Re: 237 Markey St. |

Eric,

This is the email I sent to Matt upon discovering the mortgage deficiency.

---------- Forwarded message ----------
From: "Bridget Myers" <abdbasye@gmail.com>
Date: Jan 27, 2016 3:31 PM
Subject: Re: 237 Markey St.
To: "Matt Walker" <mattwalker@haringrealty.com>
Cc:

Matt,

I received a phone call from USDA today asking to update my mailing address and contact information for a "Debt Recovery Packet" to be sent to me as a borrower of a defaulted mortgage.

I was hoping to resolve the issue with educating and familiarizing myself with the documents regarding the sale of the property to explain the purpose of USDA's contact.

The agent told me $42,000 is still owed on the mortgage, for which my name has still not been released, per the parameters of our divorce decree within 12 months of our divorce.

We're way past the 12 month mark, and I had assumed with the sale of the property, the mortgage would either be paid off completely or settled upon due to the very little explanation and general lack of communication between Don and myself.

No one explained a "Short Sale" to me, that there would still be leftover amounts due on the mortgage.

USDA stated they have been attempting to reach Don, but have his old phone number on file and no updated addresses other than the Markey St. property.

I explained my legal release of financial obligations/rights to the property and Don's court ordered mandate to either refinance to free my name or pay off the mortgage through a sale (even if a sale resulted in a deficient amount) within 12 months of 8/12/2014.

PLAINTIFF'S
EXHIBIT

*tabbies*

⟋

1

Before freaking out or contacting a lawyer, I was hoping you could elucidate this situation very clearly for me, as the court tells me my only alternative to having my name removed as decreed (by satisfying/full payoff of mortgage) would require filing a contempt of court motion against Don, and the court granting me a "Quick Deed" release from the mortgage.

This is not an avenue I desire nor look forward to.

If Don is planning on repaying the remainder of the mortgage or refinancing along with a new property, USDA Debt Recovery Department is completely unaware of it and denies any payment plans, installments, promissory notes or even current contact with Don.

This leaves an unpaid and delinquent mortgage on my credit and prevents me from moving forward with property investments of my own.

I have no desire to create waves with Don, nor bother/upset him with my knowledge of this if he already has something worked out. (Which seems unlikely due to USDA's ignorance of our divorce, financial responsibility, or contact information)

My purpose in emailing you is in an attempt to understand the mortgage negotiations you made with USDA to procure the sale of the property, as they were not included in any of the paperwork. And the debt recovery department is unaware of any plans.

What is the next step in resolving the remaining mortgage, so moving forward on property investments can resume?

Matt Walker, Realtor®
419-565-3731
Haring Realty, Inc.
1180 Lexington Ave.
Mansfield, OH. 44907
Fax: 419-756-7099

mattwalker@haringrealty.com

www.haringrealty.com

> On Jan 21, 2016, at 3:51 PM, Bridget Myers <abdbasye@gmail.com> wrote:
>
> Awesome, thanks!!!

On Jan 21, 2016 3:46 PM, "Matt Walker" <mattwalker@haringrealty.com> wrote:
Hi Bridget,

This should cover everything. Let me know if there is something specific you need. I am here to help. Have a nice evening.


Matt

Matt Walker, Realtor®
419-565-3731
Haring Realty, Inc.
1180 Lexington Ave.
Mansfield, OH. 44907
Fax: 419-756-7099

mattwalker@haringrealty.com

www.haringrealty.com

Form RD 1940-16
(Rev. 6-99)

Form Approved
OMB No. 0575-0172

**UNITED STATES DEPARTMENT OF AGRICULTURE**
**RURAL HOUSING SERVICE**

### PROMISSORY NOTE

Type of Loan  SECTION 502                          Loan No. 33105081

Date:  07-25-2005

237 Markey Street
_____
(Property Address)
Bellville          ,  Richland          ,  OH
(City or Town)          (County)          (State)

BORROWER'S PROMISE TO PAY. In return for a loan that I have received, I promise to pay to the order of the United States of America, acting through the Rural Housing Service (and its successors) ("Government") $ 117,900.00
(this amount is called "principal"), plus interest.

INTEREST. Interest will be charged on the unpaid principal until the full amount of the principal has been paid. I will pay interest at a yearly rate of        5.6250        %. The interest rate required by this section is the rate I will pay both before and after any default described below.

PAYMENTS. I agree to pay principal and interest using one of two alternatives indicated below:

☐ I. Principal and interest payments shall be temporarily deferred. The interest accrued to _____ shall be added to the principal. The new principal and later accrued interest shall be payable in _____ regular amortized installments on the date indicated in the box below. I authorize the Government to enter the amount of such new principal here: $ _____ and the amount of such regular installments in the box below when such amounts have been determined. I agree to pay principal and interest in installments as indicated in the box below.

☒ II. Payments shall not be deferred. I agree to pay principal and interest in        396        installments as indicated in the box below.

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the   25th   day of each month beginning on        August 25     2005   and continuing for   395   months. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this note. My monthly payments will be applied to interest before principal. If on        July 25        2038  I still owe amounts under this note, I will pay those amounts in full on that date, which is called the "maturity date."
My monthly payment will be $ 655.54          . I will make my monthly payment at the post office address noted on my billing statement          or a different place if required by the Government.

PRINCIPAL ADVANCES. If the entire principal amount of the loan is not advanced at the time of loan closing, the unadvanced balance of the loan will be advanced at my request provided the Government agrees to the advance. The Government must make the advance provided the advance is requested for an authorized purpose. Interest shall accrue on the amount of each advance beginning on the date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of the advance as shown in the Record of Advances below. I authorize the Government to enter the amount and date of such advance on the Record of Advances.

HOUSING ACT OF 1949. This promissory note is made pursuant to title V of the Housing Act of 1949. It is for the type of loan indicated in the "Type of Loan" block at the top of this note. This note shall be subject to the present regulations of the Government and to its future regulations not inconsistent with the express provisions of this note.

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0575-0172. The time required to complete this information collection is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

1

**PLAINTIFF'S EXHIBIT**
E

JUL 2 6 2005

**LATE CHARGES.** If the Government has not received the full amount of any monthly payment by the end of ___15___ days after the date it is due, I will pay a late charge. The amount of the charge will be _____4_____ percent of my overdue payment of principal and interest. I will pay this charge promptly, but only once for each late payment.

**BORROWER'S RIGHT TO PREPAY.** I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Government in writing that I am making a prepayment.

I may make a full prepayment or partial prepayment without paying any prepayment charge. The Government will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Government agrees in writing to those changes. Prepayments will be applied to my loan in accordance with the Government's regulations and accounting procedures in effect on the date of receipt of the payment.

**ASSIGNMENT OF NOTE.** I understand and agree that the Government may at any time assign this note without my consent. If the Government assigns the note I will make my payments to the assignee of the note and in such case the term "Government" will mean the assignee.

**CREDIT ELSEWHERE CERTIFICATION.** I certify to the Government that I am unable to obtain sufficient credit from other sources at reasonable rates and terms for the purposes for which the Government is giving me this loan.

**USE CERTIFICATION.** I certify to the Government that the funds I am borrowing from the Government will only be used for purposes authorized by the Government.

**LEASE OR SALE OF PROPERTY.** If the property constructed, improved, purchased, or refinanced with this loan is (1) leased or rented with an option to purchase, (2) leased or rented without option to purchase for 3 years or longer, or (3) is sold or title is otherwise conveyed, voluntarily or involuntarily, the Government may at its option declare the entire remaining unpaid balance of the loan immediately due and payable. If this happens, I will have to immediately pay off the entire loan.

**REQUIREMENT TO REFINANCE WITH PRIVATE CREDIT.** I agree to periodically provide the Government with information the Government requests about my financial situation. If the Government determines that I can get a loan from a responsible cooperative or private credit source, such as a bank or a credit union, at reasonable rates and terms for similar purposes as this loan, at the Government's request, I will apply for and accept a loan in a sufficient amount to pay this note in full. This requirement does not apply to any cosigner who signed this note pursuant to section 502 of the Housing Act of 1949 to compensate for my lack of repayment ability.

**SUBSIDY REPAYMENT AGREEMENT.** I agree to the repayment (recapture) of subsidy granted in the form of payment assistance under the Government's regulations.

**CREDIT SALE TO NONPROGRAM BORROWER.** The provisions of the paragraphs entitled "Credit Elsewhere Certification" and "Requirement to Refinance with Private Credit" do not apply if this loan is classified as a nonprogram loan pursuant to section 502 of the Housing Act of 1949.

**DEFAULT.** If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default the Government may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Government may require me to immediately pay the full amount of the unpaid principal, all the interest that I owe, and any late charges. Interest will continue to accrue on past due principal and interest. Even if, at a time when I am in default, the Government does not require me to pay immediately as described in the preceding sentence, the Government will still have the right to do so if I am in default at a later date. If the Government has required me to immediately pay in full as described above, the Government will have the right to be paid back by me for all of its costs and expenses in enforcing this promissory note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

2

Account # 33105081

**NOTICES.** Unless applicable law requires a different method, any notice that must be given to me under this note will be given by delivering it or by mailing it by first class mail to me at the property address listed above or at a different address if I give the Government a notice of my different address. Any notice that must be given to the Government will be given by mailing it by first class mail to the Government at USDA Rural Housing Service, c/o Customer Service Branch Post Office Box 66889, St. Louis, MO 63166 , or at a different address if I am given a notice of that different address.

**OBLIGATIONS OF PERSONS UNDER THIS NOTE.** If more than one person signs this note, each person is fully and personally obligated to keep all of the promises made in this note, including the promise to pay the full amount owed. Any person who is a guarantor, surety, or endorser of this note is also obligated to do these things. The Government may enforce its rights under this note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this note. The term "Borrower" shall refer to each person signing this note.

**WAIVERS.** I and any other person who has obligations under this note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Government to demand payment of amounts due. "Notice of dishonor" means the right to require the Government to give notice to other persons that amounts due have not been paid.

**WARNING.** Failure to fully disclose accurate and truthful financial information in connection with my loan application may result in the termination of program assistance currently being received, and the denial of future federal assistance under the Department of Agriculture's Debarment regulations, 7 C.F.R. part 3017.

_____ Seal
Borrower Donald L Basye

_____ Seal
Borrower Bridget A Basye

_____ Seal
Borrower

_____ Seal
Borrower

| RECORD OF ADVANCES | | | | | |
|---|---|---|---|---|---|
| AMOUNT | DATE | AMOUNT | DATE | AMOUNT | DATE |
| (1) $ | | (8) $ | | (15) $ | |
| (2) $ | | (9) $ | | (16) $ | |
| (3) $ | | (10) $ | | (17) $ | |
| (4) $ | | (11) $ | | (18) $ | |
| (5) $ | | (12) $ | | (19) $ | |
| (6) $ | | (13) $ | | (20) $ | |
| (7) $ | | (14) $ | | (21) $ | |
| | | | | TOTAL $ | |

3



**USDA** United States Department of Agriculture

Rural Development          February 3, 2017                    Account #33105081

Centralized Servicing
Center

PO Box 66889              Bridget A Basye
St. Louis MO 63166         10940 Yankee St
                          Fredericktown, OH 43019
Voice 800.414.1226
TDD/TTY                   RE: Donald L Basye
800.438.1832              Bridget A Basye
Fax 314.457.4431          237 Markey St
                          Bellville, OH 44813

Dear Bridget A Basye,

Thank you for contacting The Department of Agriculture-Rural Development
(USDA-RD). In response to your request for Release of Liability from your
Rural Development (RD) loan, the following information must be provided to
this office:

o    A filed copy of the Divorce Decree or Property Settlement document,
signed by judge, indicating party responsible for debt with USDA-RHS.

o    A copy of the filed and recorded Quit Claim Deed or Warranty Deed,
signed by the departing borrower. The legal description of the property must be
included.

o    Completed Financial Statement for remaining borrower.

o    Verification of income for remaining borrower in the form of 2
consecutive pay stubs or award letter(s) for Social Security, SSI, Disability,
Workman's Compensation, Unemployment or any non-employment income as it
applies.

o    Copy of the most recent Federal Income Tax Return, including W-2 form
of remaining borrower.

o    Complete addresses and telephone numbers for both the departing and
remaining borrowers.

o    Written statement from the departing borrower requesting to be released
from the loan.

Please send the information to the address listed below:

USDA – Rural Development/CSC

USDA is an equal opportunity provider, employer, and lender



Payoff/Research Section FC-252
PO Box 66889
St. Louis, MO 63166

You may also contact us by phone at the numbers listed below:

*Past Due Account*
Call 1-800-793-8861 Monday through Thursday from 7:00 a.m. to 9:00 p.m., and Friday
7:00 a.m. to 5:00 p.m. Central Time, to speak with a Counselor for options to bring your
account current.

*All Other Inquiries*
Call 1-800-414-1226 or TDD/TTY 1-800-438-1832, Monday through Friday from 7:00
a.m. to 5:00 p.m. Central Time, to speak with a Customer Service Representative.

With a touch-tone telephone, the Interactive Voice Response Unit (IVR) can provide
automated confidential account information, seven days per week, outside of normal
business hours. Please refer to your account number(s) when you contact us.

The Federal Equal Credit Opportunity Act prohibits creditors from discriminating against
credit applicants on the basis of race, color, religion, national origin, sex, marital status,
age (provided that the applicant has the capacity to enter into a binding contract); and
because all or parts of the applicant's income is derived from any public assistance
program; or because the applicant has in good faith, exercised any rights under the
Consumer Credit Protection Act. The Federal Agency that administers compliance with
this law concerning this creditor is the Federal Trade Commission. If a person believes
he or she was denied assistance in violation of this law, they should contact the Federal
Trade Commission, Washington, DC 20580.

Sincerely,

*Jennifer Reams*

Payoff/Research Section
Customer Service Branch

## CUSTOMER FINANCIAL STATEMENT

| Bank Accounts: | Name on Account | Balance |
| --- | --- | --- |

Checking/Savings/IRA

|  |  |  |
| --- | --- | --- |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

| Assets: | Name on Title/Deed | $ Value |
| --- | --- | --- |

Autos, Trucks, etc.

|  |  |  |
| --- | --- | --- |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

Real Estate

|  |  |  |
| --- | --- | --- |
|  |  |  |
|  |  |  |

Other Assets

|  |  |  |
| --- | --- | --- |
|  |  |  |

### Credit/Loan Accounts

| Auto/Real Estate: Owed | Acct. # | Monthly Payment | Balance |
| --- | --- | --- | --- |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Credit Cards/Other:

|  |  |  |  |
| --- | --- | --- | --- |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | : | In Proceedings Under Chapter 7 |
| | : | |
| DONALD L. BASYE | : | CASE NO. 16-61628 |
| | : | |
| | : | ADV. NO. 16-06044 |
| Debtor | : | |
| | : | |
| BRIDGET BASYE | : | JUDGE RUSS KENDIG |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | PLAINTIFF'S FIRST DISCOVERY |
| | : | REQUESTS TO DEFENDANT |
| DONALD L. BASYE | : | |
| | : | |
| Defendant | : | |

These Discovery Requests are submitted to the Defendant, Donald L. Basye to be answered by him within thirty (30) days after service upon the Defendant.

### Definitions

a. The words "you" and "your" refer to Defendant, Donald L. Basye.

b. The term Exhibit A refers to the divorce decree, a copy of which was attached as Exhibit A to the complaint.

c. Exhibit B refers to a debt collection letter, a copy of which was attached as Exhibit B to the complaint.

d. The term "The Marital Debt" shall have the same definition as in the complaint.

1



PLAINTIFF'S
EXHIBIT
G

e. The term "The Marital Abode" refers to the property located at 237 Markey Street, Bellville, OH.

f. The term "Short-Sale" refers to the sale of The Marital Abode as described in the documents attached hereto as Exhibit C.

**Request for Admission**

1. Admit that Exhibit A is a true and accurate copy of the Judgment Entry Decree of Divorce between you and the Plaintiff.

RESPONSE: *Admit*

2. Admit that Plaintiff complied with her obligations under Exhibit A.

RESPONSE: *Deny. Plaintiff refused to sign a quit-claim deed and cooperate with defendant to achieve forgiveness of the deficiency.*

3. Admit that Plaintiff, at your request, signed a deed conveying all right, title, and interest she had in the Marital Abode at 237 Marquee St., Bellville, Richland County, Ohio in order to facilitate the Short-Sale .

RESPONSE: *Admit*

4. Admit that you negotiated a sale of the Marital Abode for an amount less than the first mortgage balance owing.

RESPONSE: *Admit however I also negotiated to have the deficiency forgiven but Bridget failed to cooperate.*

5. Admit that Plaintiff signed the documents attached as Exhibit C at your request so that you could complete the Short-Sale of the Marital Abode.

RESPONSE:

Admit

6. Admit that Exhibit B correctly states the current balance owing on the Marital Debt as of June 13, 2016.

RESPONSE:

Deny

7. Admit that Exhibit A required you to pay the Marital Debt and save Plaintiff harmless thereon.

RESPONSE:

Deny

8. Admit that you have made no payments upon the Marital Debt since the Short-Sale.

RESPONSE:

Admit

3

9. Admit that your obligation to save Plaintiff harmless upon the Marital Debt is a non-dischargeable debt under 11 U.S.C. §523(A)15.

RESPONSE

DeNY

## Interrogatories

1. State the name of each person, other than your attorney, who participated in preparing answers to these interrogatories.

RESPONSE: Donald Busye

2. Please identify any and all expert witnesses you intend to call at any hearing in the above captioned matter.

RESPONSE: NONE

3. If you deny that you negotiated the Short-Sale of The Marital Abode or if you deny that agents acting on your behalf negotiated the Short-Sale of The Marital Abode, explain how the Short-Sale was accomplished.

RESPONSE: The short-Sale was accomplished thrugh my realtoR.

4

4. If you deny that Plaintiff cooperated in signing documents you needed to accomplish the Short-Sale of The Marital Abode, identify each respect in which she failed to comply.

RESPONSE: The USDA sent a forgiveness packet to myself and Bridget my ex-wife. If completed and accepted by the USDA there would have been a forgiveness of the deficiency. It is my understanding a representative from the USDA spoke with Bridget about the process to forgive a ⊛

5. If you deny that Exhibit B correctly states the current balance owing on The Marital Debt, then please state the actual amount, if any, that is due and owing in your opinion.

RESPONSE: I am without information to answer this question. I believe the balance on Exhibit B includes repairs and maintenance on the property made in order to resell the property.

6. If you deny that Exhibit A required you to pay The Marital Debt and save Plaintiff harmless thereon, explain in detail the basis of your denial.

RESPONSE: I attempted to hold Bridget harmless through the deficiency forgiveness program.

7. If you assert that you have made payments upon The Marital Debt since the payment arising from the Short-Sale, explain what payments you made and describe your proof of payment.

RESPONSE: NO payments have been made.

⊛ deficiency. My mother, Robin Walker also explains the process to Bridget but she refused to complete and return the packet.

5

## Request for Production of Documents

1. If you deny that Exhibit B correctly states the current balance owing on The Marital Debt as of June 13, 2016, please attach copies of all documents that provide a basis for your denial.

RESPONSE: *Will supplement*

2. If you deny that Plaintiff complied with her obligations under Exhibit A, attach a copy of any document that supports or evidences her failure to comply.

RESPONSE: *Will supplement. We are in the process of securing the notes from the USDA on their file.*

Respectfully submitted,

Eric S. Miller (#0003166)
Attorney for Plaintiff
13 Park Avenue West, Suite 608
Mansfield, OH 44902
(419) 522-6262
Fax: (419) 524-0906
ericmiller@neo.rr.com

6

State of Ohio           )
                           ) ss:

County of           )

        I, Donald L. Basye, hereby certify that the foregoing answers and responses to Plaintiff's First Discovery Requests to Defendant are correct and complete to the best of my knowledge.

                                      _____
                                      Donald L. Basye

        Sworn to before me, a Notary Public, and subscribed in my presence this 28 day of February _____, 2017.

                                        _____
                                      Notary Public

                                   **R. JOSHUA BROWN**
                                      Attorney At Law
                              NOTARY PUBLIC, STATE OF OHIO
                         My Commission Has No Expiration Date
                                Section 147.03 O.R.C.

## CERTIFICATE OF SERVICE

        This is to certify that on January ____, 2017, a copy of Plaintiff's First Discovery Requests to Defendant, Donald L. Basye to the following:

Donald L. Basye
3852 Bellville North Road
Bellville, OH 44813-9062

R. Joshua Brown, Esq.
32 Lutz Avenue
Lexington, OH 44904
Email: bk.joshbrown@gmail.com

Beth Owens, Esq.
24 W. Third St., Suite 200
Mansfield, OH 44902

                                 _____
                                 Eric S. Miller (#0003166)
                                 Attorney for Plaintiff

7

## SUMMARY OF EXHIBIT C
### 5 Pages of Documents

1. Mortgage Loan Payoff Agreement

2. Settlement Statement (HUD-1) consisting of 2 pages

3. August 25, 2015 letter from USDA to Haring Realty, Inc./Matt Walker

4. Authorization to Release/Negotiate with Lender